**TEXAS EMPLOYERS' INS. ASS'N v. SHILLING.   (No. 10443.)**

(Court of Civil Appeals of Texas. Fort Worth. Nov. 17, 1923. Rehearing Denied Dec. 15, 1923.)

1. **Master and servant �köÜ418(5) — Admission of hearsay testimony in compensation proceedings held prejudicial error.**

In a suit by an employee to set aside an order of the Industrial Accident Board made final by Vernon's Ann. Civ. St. Supp. 1918, art. 5246—44 in which employer's insurer was made defendant, where plaintiff on the issue of total incapacity was permitted without objection to testify as to what doctors told him was wrong with his foot, admission over defendant's objection of plaintiff's testimony as to what doctor Y. said was wrong with the foot *held* prejudicial error, where Y. did not testify as did the other doctors who contradicted plaintiff, and the jury were led to believe plaintiff's testimony of doctor Y.'s statement was competent on the issue which was sharply contested.

2. **Evidence �köÜ528(2)—Exclusion of doctor's opinion that injury did not incapacitate plaintiff, held error.**

Where in a suit to set aside an award of the Industrial Accident Board made final by Vernon's Ann. Civ. St. Supp. 1918, art. 5246—44, the issue was whether plaintiff was totally incapacitated, the opinion of a doctor as such, who examined and took X-rays of plaintiff, that the injury had not incapacitated him, was competent with the facts upon which such opinion was predicated, and it was error to exclude his testimony merely on the ground that the subject was not one for expert opinion.

3. **Master and servant ⊞Ö385(20)—Compensation in lump sum authorized only in case of permanent total incapacity.**

Under Vernon's Ann. Civ. St. Supp. 1918, art. 5246—33, power of the court to award lump compensation for injuries is limited to cases where such injuries result in death or total permanent incapacity, and the exception in the proviso that a lump sum may be awarded where it is "manifest hardship and injustice would otherwise result" is limited to cases provided for in the same section, namely, where death or total permanent incapacity is the result, and hence where the jury did not find that the injury resulted in permanent total incapacity it was error to award a lump sum notwithstanding they found that a hardship and injustice would otherwise result.

4. **Master and servant ⊞Ö385(20)—Total incapacity for 400 weeks not "permanent incapacity."**

A total incapacity for a definite period as long even as 400 weeks is not tantamount to an incapacity that is permanent, within Ver-

non's Ann. Civ. St. Supp. 1918, art. 5246—33, in view of articles 5246—18, 5246—25.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Permanent Incapacity.]

**5. Master and servant ⬳416—Decrees of Accident Board are in nature of judgments.**

While the Industrial Accident Board is not a court, its decrees are in the nature of judgments, and, in the investigations and determinations it is called upon to make, the Board exercises judicial functions.

Appeal from District Court, Stephens County; C. O. Hamlin, Judge.

Suit by Charles Shilling against the Texas Employers' Insurance Association to set aside the final order of the Industrial Accident Board. Judgment for plaintiff, and defendant appeals. Reversed and remanded for new trial.

Lawther & Pope, of Dallas, for appellant.

Will R. Saunders, of Breckenridge, and Theodore Mack, of Fort Worth, for appellee.

CONNER, C. J. The following statement of the nature and result of this suit is thus set forth by the appellant, to wit:

"Appellee filed this suit in the court below to set aside a final ruling and decision of the Industrial Accident Board.

"He claimed to have had his foot injured by a piece of pipe falling on same July 27, 1920, while in the employment of the Texas Pipe Line Company. Upon the eighth day after the injury the appellant, insurance carrier for the Pipe Line Company, began the payment to him of the compensation provided by the act, and continued said payments up to and until October 26, 1920, when, upon information that his incapacity for work resulting from said injury had ceased, it discontinued same. Dissatisfied with this action on the part of appellant, the appellee applied to the Industrial Accident Board for additional compensation and said Board, on the 9th day of December, 1920, entered its order to the effect: 'That the incapacity, both total and partial, suffered by said Charles Shilling consequent upon the infliction of said injury on said 27th day of July, 1920, had wholly terminated on said 26th day of October, 1920, and that, therefore, the said Texas Employers' Liability Insurance Association has fully discharged its obligation under said Texas Employers' Liability Act to the said Charles Shilling on his said claim for compensation and is entitled to be acquitted and discharged from further liability on account of the same. It is therefore ordered, adjudged, and decreed by the Industrial Accident Board that the claim for additional compensation made herein by Charles Shilling against the said Texas Employers' Insurance Association be and the same is hereby in all things denied and refused and the Texas Employers' Insurance Association is fully acquitted and discharged from all further liability on account of said claim.'

"Neither Shilling nor the insurance association appealed from the aforesaid order of the Industrial Accident Board, by reason of which,

under section 5, pt. 2, Amendment of 1917 (article 5246—44, Vernon's 1918 Supp.), the same became final and binding upon all parties thereto.

"In May, 1921, long after the 20 days for giving notice of unwillingness to abide said award, and long after the 20 days within which to file suit in some court of competent jurisdiction to set aside said award has expired, said Industrial Accident Board entered an order of date May 4, 1921, reviewing its order made December 9, 1920, reciting that its finding of date December 9, 1920, that the incapacity of said Shilling had ceased on October 26, 1920, was a mistake, and reformed its said order of December 9, 1920, so as to read, among other things, as follows:

" 'The Board further finds that ensuing from and after said 27th day of October, 1920, the said Charles Shilling continued to labor under a handicap of total incapacity for performance of labor down to this 4th day of May, 1920, embracing the period of 27 weeks for which he is entitled to recover compensation on account of and for total incapacity at the rate of $15.00 per week and aggregating the total sum of $305.00 in full and final settlement and satisfaction of his claim for compensation against said Texas Employers' Insurance Association. The Board further finds that said Charles Shilling has been represented in the presentation to and prosecution of his claim for compensation by H. T. Cooper, an attorney at Fort Worth, Tex., and that his services rendered in said connection have been of the reasonable value of $45.75.

" 'It is therefore ordered, adjudged and decreed by the Industrial Accident Board that the Texas Employers' Association pay to Charles Shilling the sum of $305.00, less the sum of $45.75 hereinafter ordered and directed paid to H. T. Cooper for legal services rendered in connection with this claim for compensation. It is further ordered, adjudged and decreed by the Board that when this award has been paid and satisfied in accordance with its terms and provisions that the Texas Employers' Insurance Association will be fully and finally acquitted and discharged from liability on account of this claim for compensation.'

"May 12, 1921, the Board entered a further order correcting its order of May 4, 1921, as follows:

" 'That in paragraph 4 of said order of December 9, 1920, reviewed as aforesaid, it was stated that total incapacity obtained in the said Charles Shilling for the performance of labor done to and including the 4th day of May, 1920, and that as a matter of fact, the intent and purpose was to fix the year as 1921, and in order to correct said mistake here now orders that said 1920 in said paragraph 4 of said order be changed and made to read 1921, and as so corrected, changed and reformed the said order of May 4, 1921, which reviewed the said order of December 9, 1920, be reaffirmed in all particulars.'

"Appellee refused to accept said additional sum of $305 so awarded him, and notified appellant that he was unwilling to abide by said award of May 4, 1921; that he did not accept said award and that he would not be bound thereby; that he had discharged H. T. Cooper, his former attorney, and had employed Estes

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

& Compton of Fort Worth, 708½ Houston street, as his attorneys.

"Thereafter, upon the 10th day of June, 1921, he filed his suit herein in the court below praying that all said orders of said Industrial Accident Board be set aside, and that he be paid compensation in a lump sum at $15 per week for 400 weeks.

"Appellant answered by (1) a plea to the jurisdiction, upon the ground that notice of unwillingness to abide the final ruling and decision of November 9, 1920, and suit to set same aside, was not given and filed within 20 and 40 days from the date of said final ruling and decision; said Board having no authority to enter said order, of May 4, 1921, reviewing and correcting said order of December 9, 1920; and, if it had, that said order of May 4, 1921, was a nunc pro tunc order and on its face related back to said date of December 9, 1920; (2) plea in abatement for nonjoinder of H. T. Cooper, in whose favor, as well as appellee's, said order of said Industrial Accident Board of May 4, 1921, was made; (3) general and special demurrer; (4) general denial.

"The case was tried by a jury in Stephens county, district court, July 28, 1922. The court overruled the plea to the jurisdiction, the plea in abatement, and all the demurrers, and submitted the case to the jury upon special issues. Upon the answers of the jury to said special issues, judgment was rendered setting aside the orders of the Industrial Accident Board of December 9, 1920, May 4, 1921, and May 12, 1921, and in favor of appellee for a lump sum of four thousand nine hundred forty-five and 82/100 dollars ($4,945.82) and all costs."

From the judgment so rendered by the district court, appellant has duly prosecuted this appeal.

[1] We are of opinion that the court erred in permitting the appellee to testify that Dr. Youngblood, a physician in Breckenridge, who had waited upon him immediately after he was injured, had told him that an examination of his foot by the X-ray had disclosed that the bones of his foot had been broken and crushed. This evidence was objected to on the ground that it was hearsay. It is very clearly so, and that it is against the rule needs no citation of authority, and we think under the evidence of this case that the error was prejudicial. The objection is answered by appellee on the ground that he was permitted to testify without objection to statements of a similar character by other physicians, to wit: That Dr. Lee had said to him that "the bone was broken all around"; that Dr. Swinney told him he had a fractured bone; that Dr. Lee told him that in his opinion he had a fracture in the foot. But we do not think that the statements by the doctors last named can be said to be the same as the statement by Dr. Youngblood. True, it may be said that in a sense the statements of these physicians embodied the fact stated by Dr. Youngblood, but they were different individuals. Dr. Youngblood lived in the county of appellee's residence and in the town of the trial, while the record shows that the other physicians named were nonresidents, and their testimony on the trial, in effect and tendency, was contradictory of their statements to appellee as he gave them while testifying.

The issue of whether appellee in fact was totally incapacitated for labor by reason of his injury was sharply contested in the evidence. We will not discuss this evidence at length, in view of another trial, but if it did not preponderate in favor of appellant's contention that appellee's foot was in a normal condition, it was such, if credited, as to strongly so show.

Dr. Youngblood was not called as a witness by appellee and did not testify, and the jury, assembled from the members of the same general community, may have given greater credence to Dr. Youngblood than to the evidence of nonresident physicians, who, according to the plaintiff's testimony, were in contradiction. The objection to the statement of Dr. Youngblood was overruled by the court, and the jury might therefore reasonably assume that it was competent evidence. So that, on the whole, we think, in view of the acutely conflicting character of the evidence upon this vital issue, that appellant's objection must be sustained.

[2] We think also there was error in excluding the testimony of Dr. A. B. Swinney, to the effect that—

"In his opinion the injury received by plaintiff to his foot on the 27th day of July, 1920, had not incapacitated the plaintiff for work; that he (the said witness) had examined the plaintiff's foot, treated the same and had X-ray pictures made of the same within three weeks after the injury in July, 1920, that he had also again examined the plaintiff's foot and had an X-ray made of the same by Dr. Wood, in July, 1922, the day before the case went to trial, and that by reason of said examination that he had formed an opinion as to the injury to the plaintiff's foot and the extent thereof and as to whether the same had resulted in any incapacity for work to plaintiff."

This was objected to in behalf of plaintiff on the ground that the subject was not one for expert opinion. It was not and is not here contended that Dr. Swinney was not a competent surgeon and physician, and as such we think it was competent for him to give his opinion as proffered, together with the facts upon which such opinion was predicated. See Jones, Blue Book on Evidence, vol. 2, § 378, and authorities cited in notes under that section.

[3, 4] We are of the further opinion that the record presents an error affecting the judgment itself. Article 5246—33, Rev. Statutes, 1918 Supp., reads as follows:

"In cases where death or total permanent incapacity results from an injury, the liability of the association may be redeemed by payment of a lump sum by agreement of the parties thereto, subject to the approval of the Industrial Accident Board hereinafter created. This section shall be construed as excluding any other char-

acter of lump sum settlement save and except as herein specified; provided, however, that in special cases where in the judgment of the Board manifest hardship and injustice would otherwise result, the Board may compel the association in the cases provided for in this section to redeem their liability by payment of a lump sum as may be determined by the Board."

In the case before us the jury found that the appellee had been totally incapacitated by his injury and that such total incapacity for labor extended 400 weeks from the date thereof, but there was no finding that such total incapacity was permanent. Adopting the usual and accepted definitions of those terms, a total incapacity for a definite period, as long even as 400 weeks, is not tantamount to an incapacity that is permanent, i. e., changeless and without ending. By careful reading of the foregoing statutes, it will be noted that the power of the court to award compensation for injuries under the act is limited to cases where such injuries result in death or "total permanent incapacity," and that the exception in the proviso to the effect that a lump sum may be awarded where it is "manifest hardship and injustice would otherwise result" is limited to the "cases provided for" in the section. The cases provided for in the section are where "death or total permanent incapacity" is the result. And the section has been so construed by the Texarkana Court of Civil Appeals in the case of Texas Employers' Ins. Ass'n v. Pierce, 230 S. W. 872. That court, speaking through Chief Justice Willson, had this to say in construing it:

"When the avowed purpose of the act (article 5246—37) to provide for the payment weekly of the compensation an injured employé is entitled to, and other provisions of the act (articles 5246—14, 5246—15, 5246—18, 5246—19, 5246—21, 5246—22, 5246—23 and 5246—34) are kept in mind, it is plain, we think, that the trial court erred when he construed the article of the statute set out above as authorizing him to render the judgment he did for a lump sum in favor of appellee. Not only was such a construction in the face of the avowed purpose of the statute, but we think it was in the face of language in said article in harmony with that purpose, and indicating that the intent of the Legislature was to restrict the payment of the compensation in a lump sum to cases where the injury to the employé resulted either in his death or a total permanent incapacity, and (2) in the judgment of the Board 'manifest hardship or injustice' would result if it were not paid in that way. The 'special cases' referred to in the proviso evidently were cases where death or total permanent incapacity resulted from the injury, for they were the 'cases provided for in this section,' in which alone the Board was authorized to compel the association to pay the compensation the employé was entitled to in a lump sum."

If the foregoing construction of the statute is correct and we are of the opinion that it is, then it follows that in the present case the court was not authorized to assess compensation in a lump sum, as was done, notwithstanding the fact that appellee alleged certain circumstances in the effort to bring himself within the proviso of the article and that the jury found in answer to a special issue that a failure to pay compensation in a lump sum would result in "manifest hardship and injustice." That the indicated construction of the article is in accord with the legislative purpose in enacting the Workmen's Compensation Law seems the more reasonable when it is considered, among other things, that, by the terms of the act, in cases where total incapacity for 400 weeks is found to exist, the indemnifying company may nevertheless present and have determined the issue of whether such total incapacity to labor has ceased. In other words, a total incapacity for labor may exist at the time of a trial and circumstances may reasonably indicate that it will continue to exist for 400 weeks and yet not be permanent, and the Legislature doubtless had in view the fact, which may be said to be self-evident, that the question of whether a present total incapacity will continue five or six years after the date of the trial is more or less speculative and uncertain, and hence that to meet such uncertainty it provided that the indemnifying company might, as stated, at any time within the period of 400 weeks present for determination the question of whether the total incapacity for labor had ceased, and, if so, be discharged from further weekly payments. See Vernon's Statutes, arts. 5246—18, 5246—25.

[5] In view of another trial we will briefly notice another proposition urged in behalf of appellant. The judgment of the Industrial Accident Board, set out in an exhibit to appellee's petition, and which the plaintiff sought to have set aside, decreed to appellee in full satisfaction of his claim the total sum of $305, and to H. T. Cooper $45.75 as compensation for his services as appellee's attorney, and this fact was pleaded in abatement of the suit.

The error of the court in overruling the plea in abatement, if error it was, can be so easily avoided upon another trial that we forbear a full discussion of the question, but will merely say that on its face the decree of the accident board is a least apparently joint, and if that decree is to be clothed with the dignity of a judgment it is undoubtedly true that H. T. Cooper would be a necessary party. While the Accident Board is not a court, yet its decrees are in the nature of judgments, and the Board, in the investigations and determinations it is called upon to make, exercises judicial functions. And some of the authorities at least treat orders and decrees of like bodies as so closely allied to judgments of courts as to be effective against collateral attack. See 1 Black on Judgments, § 3 ; Longfellow v. Quimby, 29 Me. 196, 48 Am.

Dec. 525; Kelly v. Wimberly, 61 Miss. 548. In the case first cited, it was held that road commissioners in adjudicating upon the necessity of a road, and in locating and making assessments for the same, act judicially, and that the records of their proceedings and judgments are entitled to the same respect as the record and judgments of other tribunals, so long as they act within their jurisdiction, and cannot be attacked collaterally. In the Mississippi case it was held that, a claim being for a certain and ascertained amount, its allowance and audition by the town council is equivalent to a judgment at law, and mandamus will lie to enforce its payment.

However, we need not and do not decide this question, inasmuch as the record shows that Mr. Cooper is a resident of Fort Worth and Tarrant county, and can, for aught the record shows, be very easily made a party.

Appellant's plea to the jurisdiction of the district court is not urged upon us, and we deem it unnecessary to notice other questions presented. But, for the errors indicated, it is ordered that the judgment be reversed and the cause remanded for a new trial not inconsistent with this opinion.